UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,                                                    Case No. 11-20483

v.                                                                        Hon. Nancy G. Edmunds

FRED DANIELS,

      Defendant.

---

| Jeanine Brunson | David S. Steingold (P29752) |
|---|---|
| Assistant United States Attorney | Samantha M. Baker (P83674) |
| Office of the United States Attorney | Attorneys for Defendant |
| 211 W. Fort Street, Suite 2001 | 500 Griswold Street, Suite 2320 |
| Detroit, Michigan  48226 | Detroit, Michigan 48226 |
| 313.226.9597 | 313.962.0000 |

## SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE

Mr. Fred Daniels, through his attorneys David S. Steingold and Samantha M. Baker, respectfully requests that this Court order his compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of the COVID-19 global pandemic, the outbreak at Butner FMC, and its risk to Mr. Daniels's health.

Mr. Daniels is serving a 141-month sentence after pleading guilty to interference with commerce by robbery in violation of 18 U.S.C. §1951(a) and use of a firearm during a crime of violence in violation of 18 U.S.C. §924(c)(1)(A).  Mr. Daniels began serving his sentence on May 21, 2012 and he has served over 75% of his sentence. His projected release date is April 28, 2022. If given the opportunity to be released to a halfway house, Mr. Daniels could be released on October 28, 2021 – less than a year from now.

1

Mr. Daniels has sickle cell anemia, a condition he had when he entered prison. During his incarceration, he was diagnosed with Hodgkin's Lymphoma Disease and received chemotherapy treatment. Mr. Daniels submitted a request for compassionate release to the warden of Butner FMC on August 17, 2020 which was denied on September 14, 2020.

Mr. Daniels submitted a letter to this Court dated September 14, 2020 asking for compassionate release but was unaware that the Court considered that letter to be his motion. Mr. Daniels respectfully requests that this Court accept this supplemental brief in support of Mr. Daniels's Motion for Compassionate Release. Government counsel does not oppose this supplemental filing.

For these reasons, and those more fully stated below, Mr. Daniels respectfully requests this Court grant Mr. Daniels's Motion for Compassionate Release.

## **Applicable Law**

In 2018, Congress enacted the First Step Act, which amended 18 U.S.C. §3582(c)(1)(A)(i) and gave the Court greater authority to reduce a defendant's sentence. This amendment allows defendants to file a motion with the court seeking a reduction in their imprisonment term if "extraordinary and compelling reasons warrant such a reduction."[1] The reduction must be "consistent with applicable policy statements issued by the Sentencing Commission."[2] The policy statement provides:

> **1.** Extraordinary and Compelling Reasons. Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
> **(A)** Medical Condition of the Defendant.

---

[1] 18 U.S.C. § 3582(c)(1)(A)(i)
[2] 18 U.S.C. § 3582(c)(1)(A)

2

**(i)** The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
**(ii)** The defendant is—
    **(I)** suffering from a serious physical or medical condition,
    **(II)** suffering from a serious functional or cognitive impairment, or
    **(III)** experiencing deteriorating physical or mental health because of the aging process,
    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
[…]

**(D)** As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).[3]

For the Court to grant an imprisonment term reduction under 18 U.S.C. § 3582, (1) the defendant must have fully exhausted their administrative remedies or (2) there was a lapse in at least 30 days from the warden's receipt of the defendant's request, whichever is earlier.[4] The Court must also consider the factors set forth in 18 U.S.C. § 3553(a) to the extent they are applicable,[5] including:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed—
    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (B) to afford adequate deterrence to criminal conduct;
    (C) to protect the public from further crimes of the defendant; and
    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for—
(5) any pertinent policy statement—

---

[3] U.S.S.G. §1B1.13(n.1)
[4] 18 U.S.C. §3582(c)(1)(A)(i)
[5] 18 U.S.C. §3582(c)(1)(A)

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

### I. Mr. Daniels Has Exhausted His Administrative Remedies

Mr. Daniels submitted a request for compassionate release to the warden of Butner FMC on August 17, 2020. The warden denied the request on September 14, 2020. Mr. Daniels exhausted his administrative remedies because the warden's denial was submitted on the same date that Mr. Daniels wrote his letter to this Court.

### II. Mr. Daniels's Health Concerns, Which Increase His Risk for Serious Illness or Death from COVID-19, Are Extraordinary and Compelling Reasons to Grant Compassionate Release

Although Mr. Daniels is only thirty-two years old, he suffers from sickle cell disease which puts him at a higher risk for contracting and dying from COVID-19. He also has a history of Hodgkin's Lymphoma Disease and received chemotherapy treatment in late 2018. With the spread of COVID-19 in the federal prison system, including Butner FMC, Mr. Daniels is at a high risk of contracting the virus and experiencing complications from the virus because he has sickle cell disease and a compromised immune system.

*COVID-19 at Butner FMC*

The Bureau of Prisons ("BOP") has over 125,000 inmates in BOP-managed institutions like Butner FMC.[6] The percentage of positive tests in the BOP is nearly 27%.[7] Even during Michigan's latest spike in COVID-19 cases, the percentage of positive tests has hovered around 14%.[8] A total of 166 inmates at Butner FMC have tested positive for COVID-19, 97 of which

---

[6] BOP Coronavirus available at www.bop.gov/coronavirus
[7] *Id*.
[8] Michigan Coronavirus Data available at https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html

4

are still active cases.[9] There have also been thirty-one staff cases, seven of which are currently active.[10] Butner FMC is located on the Butner Federal Correctional Complex, which has five prisons including two medium security prisons, a low security prison, a minimum-security camp, and the medical center. Many of the inmates on the complex receive outpatient care at the medical center.[11] Within the complex, 924 inmates have tested positive for COVID-19 and 26 inmates have died.[12] Butner's failure to adequately protect inmates from contracting COVID-19 has resulted in a civil rights case filed by the American Civil Liberties Union of North Carolina.[13]

Even if the facility tests every inmate, guards enter the facility daily. North Carolina has seen a 25% increase in COVID-19 cases in the last two weeks. Additionally, guards rotate between facilities on the Butner Federal Correctional Complex, increasing the possibility of transmitting the virus from one building to another.

Mr. Daniels's risk of contracting the virus is heightened because of the prison environment. Mr. Daniels shares a cell with one other inmate. While they are not able to maintain a six-foot distance from each other, they are able to wash their hands frequently and are required to wear masks. Meals are brought to inmates in their cells to avoid group gatherings for meal times. However, inmates who have tested positive for COVID-19 are quarantined in cells that are located on the same floor as Mr. Daniels. Those inmates are responsible for cleaning the unit as well as distributing food to other inmates on the floor.

---

[9] BOP Coronavirus available at www.bop.gov/coronavirus
[10] *Id.*
[11] Joseph Neff and Dan Kane, *Freed From Prison, Dead from COVID-19, Not Even Counted.* THE MARSHALL PROJECT. (July 10, 2020) https://www.themarshallproject.org/2020/07/10/freed-from-prison-dead-from-covid-19-not-even-counted
[12] BOP Coronavirus available at www.bop.gov/coronavirus
[13] See *Hallinan et al v. Scarantino et al*, Case No. 5:20-cty-03333-M in the Eastern District of North Carolina.

*Health Risks to Mr. Daniels*

If Mr. Daniels contracts the virus, the risk of death is higher due to his current medical condition. Mr. Daniels currently has sickle cell disease, a disease in which there are not enough healthy red blood cells to carry oxygen through the body.[14] It can lead to frequent infections and individuals with the disease are more likely to suffer from pulmonary disease and pneumonia.[15]

Individuals with underlying health conditions are six times more likely to be hospitalized and twelve times more likely to die from COVID-19.[16] Those with sickle cell disease are also more likely to suffer from severe illness or death from COVID-19.[17] They are more likely to be hospitalized or admitted to intensive care and unfortunately, more likely to die from the virus.[18] Mr. Daniels was also diagnosed with Hodgkin's Lymphoma in October 2018 and received chemotherapy treatment. He continues to develop swelling in his lymph nodes which require him to be taken to outside doctors for testing and treatment. He currently has an enlargement under his right arm that is being assessed.

Mr. Daniels has a chronic health condition that puts him at a heightened risk for contracting COVID-19 and suffering severe illness or death. The possibility of contracting the

---

[14] Mayo Clinic Sickle Cell Anemia available at https://www.mayoclinic.org/diseases-conditions/sickle-cell-anemia/symptoms-causes/syc-20355876#:~:text=Sickle%20cell%20anemia%20is%20an,like%20sickles%20or%20crescent%20moons.
[15] Julie A. Panepinto et al, *Coronavirus Disease among Persons with Sickle Cell Disease, United States, March 20-May 21, 2020*. CENTERS FOR DISEASE CONTROL AND PREVENTION. (October 2020) https://wwwnc.cdc.gov/eid/article/26/10/20-2792_article
[16] Erin Stokes, MPH, et al. *Coronavirus Disease 2019 Case Surveillance – United States, January 22-May 30, 2020*. CENTERS FOR DISEASE CONTROL AND PREVENTION. (June 19, 2020) https://www.cdc.gov/mmwr/volumes/69/wr/mm6924e2.htm?s_cid=mm6924e2_w
[17] Julie A. Panepinto et al, *Coronavirus Disease among Persons with Sickle Cell Disease, United States, March 20-May 21, 2020*. CENTERS FOR DISEASE CONTROL AND PREVENTION. (October 2020) https://wwwnc.cdc.gov/eid/article/26/10/20-2792_article
[18] *Id*.

virus is not a stretch given the recent outbreaks at Butner FMC among both inmates and staff. Mr. Daniels is fearful that if he contracts COVID-19, he will not survive.

### III. Mr. Daniels is Not a Threat to the Community and the Sentencing Factors Weigh In Favor of Reducing Mr. Daniels's Term of Imprisonment

Mr. Daniels's release would not be a threat to the community. To assume that every offender convicted of weapons offenses, drug crimes, robberies, or fraud schemes is a threat to the community and therefore cannot be granted compassionate release would render 18 U.S.C. §3582(c)(1) meaningless because there are few federal inmates who are serving time for offenses that did not harm the public. Prior to the pandemic, the Bureau of Prisons moved for the compassionate release of a defendant who was serving life in prison for money laundering and drug crimes.[19] The Court granted compassionate release in that case earlier this year.[20] Courts in this district have also granted the compassionate release of defendants convicted of serious crimes including robbery, drug crimes, and RICO crimes.[21]

Mr. Daniels took responsibility for his actions when he pled guilty to both crimes with which he was charged. He understands the seriousness of his offenses and has voluntarily made efforts towards self-improvement. While he has had some misconduct issues, none of them were for violent behavior and he has only had 4 misconducts during his entire term.[22] Mr. Daniels

---

[19] *United States v. Walls*, 455 F. Supp. 3d 461 (E.D. Mich. 2020) (Defendant sentenced to life in prison for money laundering and conspiracy with intent to distribute cocaine).
[20] *United States v. Walls,* 2020 U.S. Dist. LEXIS 71515 (E.D. Mich. Apr. 23, 2020)
[21] *United States v. Weikel*, 2020 U.S. Dist. LEXIS 212344 (E.D. Mich. Nov. 13, 2020) (Defendant was sentenced to 8 years for transportation of child pornography.) *United States v. Moore*, 2020 U.S. Dist. LEXIS 205073 (E.D. Mich. Nov. 3, 2020). *United States v. Rodgers*, 2020 U.S. Dist. LEXIS 203475 (E.D. Mich. Nov. 2, 2020) (Defendant was sentenced to 200 months for bank robbery, pharmacy robbery, and using a firearm during a crime of violence). *Harrell v. United States,* 2020 U.S. Dist. LEXIS 92944 (E.D. Mich. May 28, 2020) (Defendant was sentenced to 15 years for conspiracy to possess and distribute cocaine base); *Loyd v. United States*, 2020 U.S. Dist. LEXIS 89357 (E.D. Mich. May 21, 2020) (Defendant was sentenced to 10 years for conspiracy to possess and distribute heroin).
[22] Mr. Daniels's misconducts include giving/accepting money without authorization and allowing another inmate to use his phone pin.

successfully completed the 18-month Challenge Program, which is a residential, cognitive-behavioral program for inmates. Mr. Daniels has participated in other programs which address his past behavior including: Violence Prevention, Recovery Maintenance, Rational Thinking, Lifestyle Balance, Criminal Lifestyle, Reviewing Drug Use, and Communication Skills. He has also completed career-oriented programs such as Resume Writing, Money Smart, Grant Writing, Sociology, Stock Market, Journalism, and Business Plan. Mr. Daniels has shown that he would not be a danger to the community through his non-violent record in prison, his completion of courses that address his previous lifestyle choices, and his participation in career-oriented programs.

If released, Mr. Daniels would reside with his sister in Shelby Township, Michigan. He plans to earn his Commercial Driver's License so he can gain employment. He would participate with his church to develop additional positive community support – to the extent that he is able to participate safely. He would also participate in counseling or other self-help classes to assist him with navigating life after prison. Mr. Daniels would be able to better protect himself from contracting COVID-19 if released.

Mr. Daniels was twenty-two years old when he drove his co-defendants to a robbery. He left and was not actively involved in the robbery nor did he possess a firearm. This Court sentenced Mr. Daniels to 141 months in prison. He has served over 75% of the sentence this Court imposed and he has served over 85% of his statutory term. Granting compassionate release at this time would still meet the sentencing requirements of providing adequate deterrence and reflecting the seriousness of the crimes. These crimes should not result in a death sentence,

especially for someone so young. The Court must "weigh the value of deterrence against the threat of a possibly lethal infection. In such a balance, deterrence weighs less."[23]

## Conclusion

The COVID-19 pandemic has put Mr. Daniels at an increased risk of severe illness or death if he remains incarcerated due to his underlying health condition.

For these reasons, Mr. Daniels respectfully requests that this Court order his immediate compassionate release and impose the supervised release conditions that he would have been placed on had he finished his prison term.

Respectfully submitted,

_/s/_ Samantha M. Baker
Samantha M. Baker (P83674)
Law Offices of David S. Steingold, PLLC
Attorney for Defendant
500 Griswold Street, Suite 2320
Detroit, Michigan 48226
(313) 962-0000 (phone)
(313) 962-0766 (fax)
detroitdefender@yahoo.com

_/s/_ David S. Steingold
David S. Steingold (P 29752)
Law Offices of David S. Steingold, PLLC
Attorney for Defendant
500 Griswold Street, Suite 2320
Detroit, Michigan 48226
(313) 962-0000 (phone)
(313) 962-0766 (fax)
detroitdefender@yahoo.com

Dated:  November 20, 2020

---

[23] *United States v. Gardner,* 2020 U.S. Dist LEXIS 129160 at *23-24 (E.D. Mich. July 22, 2020)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,                                 Case No. 11-20483

v.                                          Hon. Nancy G. Edmunds

FRED DANIELS,

    Defendant.

---

## PROOF OF SERVICE

I, Samantha Baker, certify that on November 20, 2020, I electronically filed the above-annexed pleading with the U.S. District Court, Eastern District of Michigan, Clerk of Court, using the ECF/CM electronic filing system, which will automatically send electronic notification of this filing to all attorneys of record for all parties.

                                                         /s/Samantha M. Baker
                                                         Samantha M. Baker